**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | |
|---|---|
| LISTON MADDEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 20-1161-TMP |
| | ) |
| KILOLO KIJAKAZI, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
|     Defendant. | ) |

---

### ORDER AFFIRMING THE COMMISSIONER'S DECISION
---

On July 23, 2020, Liston Madden filed a Complaint seeking judicial review of a Social Security disability benefits decision. (ECF No. 1.) Madden seeks to appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying him disability insurance benefits under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-34. For the reasons below, the decision of the Commissioner is AFFIRMED.

### I.    BACKGROUND

On September 9, 2010, Madden was found disabled and granted Social Security disability benefits. (R. 15.) At that time, Madden was suffering from renal failure, which met a listing within 20 C.F.R. § Part 404, Subpart P, Appendix 1 and demanded a finding of disabled. (R. 17.) However, on May 22, 2014, it was determined

that this disability had ceased as of May 1, 2014. (R. 15.) After this finding was upheld by a Disability Hearing Officer, Madden requested a hearing before an Administrative Law Judge ("ALJ") to demonstrate that he was still disabled. (Id.)

Madden's first hearing was held on November 17, 2017. (Id.) After this hearing, the ALJ entered a decision on January 25, 2018, finding that Madden's disability had ended as of May 1, 2014, and that he was no longer disabled. (R. 87.) Madden appealed to the Appeals Council, who remanded the case back to the ALJ on July 24, 2018. (R. 103.) The Appeals Council vacated the ALJ's initial decision, finding that the ALJ had failed to consider whether Madden was disabled through the date of the original decision and had failed to consider necessary medical opinions. (R. 104.) Upon remand, the ALJ held another hearing on April 15, 2019. (R. 35.)

After this hearing, the ALJ used the eight-step analysis for continuing disability questions to conclude that Madden was not disabled from May 1, 2014, through the date of the ALJ's decision. (R. 15-24.) At the first step, the ALJ determined that Madden had not engaged in any substantial gainful activity since May 1, 2014, the date his disability ended. (R. 17.) At the second step, the ALJ found that Madden had the following medically determinable impairments: "history of transient episode of renal failure, history of polysubstance abuse with delayed mental processing, and history of treatment for bipolar disorder and attention deficit

-2-

hyperactivity disorder." (Id.) The ALJ concluded that these impairments did not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

At step three, the ALJ had to consider whether any medical improvement had occurred since the onset of Madden's original disability. (R. 16.) The ALJ determined that medical improvement had occurred, since the kidney issues that originally disabled Madden had almost fully resolved. (R. 17.) Step four required the ALJ to determine whether the medical improvement is related to the ability to work. Since Madden's impairments no longer met or medically equaled the original listing for kidney failure that qualified him for disability benefits, the ALJ determined that his medical improvement was indeed related to work. (R. 16-17.) Accordingly, the ALJ then skipped step five and proceeded to step six. At step six, the ALJ concluded that Madden "continued to have a severe impairment or combination of impairments" that caused more than minimal limitation in Madden's ability to perform basic work activities. (R. 17.)

The ALJ then proceeded to step seven to determine whether Madden retained the residual functional capacity ("RFC") to perform past relevant work or adjust to other work. The ALJ found that:

> [Madden] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(b) except that he is limited to work involving only simple, routine, repetitive tasks in an environment where changes are infrequent and gradually introduced and there is only occasional contact with supervisors and coworkers and no contact with the public.

(R. 18.) Pursuant to 20 C.F.R. § 404.1567(b), medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." In reaching this RFC determination, the ALJ discussed Madden's testimony and the medical evidence in the record. (R. 18-23.) The ALJ concluded that:

> The record shows that apart from treatment for a toothache, the claimant has had medical treatment on only one occasion in the past 58 months with no medical treatment whatsoever during the past three years. The minimal treatment shows that if he had any physical symptoms since the cessation date they were minimal . . . The record contains no medical evidence as required by section 404.1508 of any physical impairment that persisted at a disabling level of severity for 12 continuous months since the cessation date. For this reason alone the claimant cannot be found to have a disabling physical impairment.

(R. 19.) The ALJ acknowledged Madden had made some countervailing statements in the past, which included telling his treating physicians he had suffered three recent heart attacks. (R. 18.) However, the ALJ noted there was no evidence of these attacks in any medical record. (Id.) Madden's treating physician and treating cardiologist also did not report any heart anomalies, trauma, or prior issues. (R. 18-19.) Thus, the ALJ concluded that "the absence of any ongoing treatment for or medically documented complaints of any cardiac symptoms shows that even if some form of cardiac

-4-

pathology were documented, it produced no ongoing symptoms." (R. 19.) The ALJ then considered the medical opinion evidence regarding physical impairments and noted that the reviewing DDS consultants assessed a lift weight limit of 25 pounds frequently, 50 pounds occasionally, and a limit of six hours of standing/walking a day. (Id.) The ALJ credited these opinions and determined Madden's RFC in light of these limitations.

The ALJ then moved to considering evidence of Madden's mental impairments, which he summarized as follows:

> When asked what his mental problems are the claimant testified that when he is under stress he "loses his cool" and that he has anxiety when he is around people. At his most recent hearing the claimant testified that he cannot work because he cannot be around people. When asked about his ability to concentrate the claimant responded that it was 'terrible' and that he switches from one project to another without finishing anything.

(Id.) The ALJ then considered whether the objective medical evidence, namely notes from Madden's treating psychiatrist Dr. Sidney Moragne and consultative examiner Dr. Dennis Wilson, supported Madden's claims of disabling anxiety, bipolar disorder, and ADHD. While Dr. Moragne had diagnosed Madden with ADHD, bipolar disorder, chronic depression, and anxiety, Dr. Wilson had not. (R. 20-22.) After discussing multiple years of treatment notes and examinations, the ALJ summarized the objective medical evidence:

> As noted above, the treating psychiatrist consistently assessed the claimant's psychiatric examination consisting of mood, affect, behavior, appropriateness, and memory as normal. These repeated assessments by the treating psychiatrist are patently incompatible with a

degree of any mental pathology that would impose ongoing
significant functional limitation. In view of the
demonstrated absence of ongoing clinical signs of
depression, anxiety, or any other mental pathology, the
allegation of disabling mental problems is unsupported
by the medical evidence . . . The record contains no
medical evidence as required by section 404.1508 of any
non-cognitive mental impairment which persisted at a
disabling level of severity (or at any level of severity)
for a period of 12 continuous months. For this reason
alone the claimant cannot be found to have a disabling
mental impairment.

(R. 21.) Following his examination of Madden's mental impairments,
the ALJ considered evidence of potential cognitive impairments. He
noted "a history of heavy substance abuse that could produce some
degree of cognitive dysfunction" and that Dr. Wilson had "diagnosed
the claimant as having mild specific learning disorders in reading
comprehension and mathematics calculation." (R. 21.)

Finally, the ALJ comprehensively considered all of the
medical opinion evidence given by Drs. Wilson and Moragne to
determine how much evidentiary weight to give each. He summarized
his assessment as follows:

As noted above, the medical record documents no ongoing
clinical signs of either [bipolar disorder or ADHD] or
even ongoing complaints of symptoms thereof. Dr.
Moragne's own notes affirmatively establish the absence
of ongoing clinical signs or even ongoing complaints of
bipolar disorder, depression, anxiety, or any other
mental pathology and are patently incompatible with
pathology that could impose the degree of functional
limitation that he opined to be present. Dr. Moragne's
assessments are not only unsupported by his own
examination findings and the other medical evidence but
are actually effectively contradicted by them . . . Dr.
Wilson opined that the claimant had no limitation of his
ability to understand, remember, and carry out complex
instructions; and moderately limited ability to make

-6-

> judgments on simple and complex work-related decisions;
> interact appropriately with supervisors, coworkers, and
> the public; and respond appropriately to usual work
> situations and changes in routine work setting. [] This
> assessment is inconsistent with Dr. Wilson's own
> findings and the record as a whole[.]

(R. 22.) Accordingly, the ALJ gave Dr. Moragne's assessments "the appropriate minimal evidentiary weight" and Dr. Wilson's "some evidentiary weight." (Id.) The ALJ then applied his RFC determination of medium work with few limitations and found that Madden was unable to perform any of his past relevant work. (R. 23.)

At the eighth and final step, the ALJ determined that "considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present as of May 1, 2014, the claimant was able to perform a significant number of jobs in the national economy." (Id.) This determination was informed by vocational expert Daniel Lustig, who provided representative jobs at the hearing that a hypothetical person with Madden's RFC could perform, such as "assembler," "bottling line attendant," and "bakery line worker." (Id.) Since these jobs existed in significant numbers in the national economy, the ALJ found that Madden was not disabled and that as of May 1, 2014, he was "capable of making a successful adjustment to work." (R. 24.)

On May 15, 2019, the ALJ issued a decision detailing the findings summarized above. The Appeals Council denied Madden's request for review. (R. 1.) Madden now seeks judicial review of

the ALJ's decision, which stands as the final decision of the Commissioner under § 1631(c)(3) of the Act. On appeal, Madden primarily argues that the ALJ incorrectly applied 20 C.F.R. § 404.1527 by only considering the "supportability" and "consistency" of Dr. Montagne's and Dr. Wilson's opinions. (ECF No. 22 at 11.)

## II.  ANALYSIS

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health &

Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

## B.   The Eight-Step Analysis

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Disability benefit recipients have their cases periodically reviewed to determine whether their benefits can continue. 20 C.F.R. § 404.1594(a). These reviews look at evidence on a "neutral basis" to determine whether the recipient is still disabled. Delacotera v. Colvin, No. 3:16-cv-01464, 2017 WL 169104, at *2 (M.D. Tenn. Jan. 17, 2017) (citing 20 C.F.R. § 404.1594(b)(6)). However, unlike initial determinations, "the ultimate burden of proof lies with the Commissioner in termination proceedings." Id. at *3 (quoting Kennedy v. Astrue, 247 F. App'x 761, 765 (6th Cir. 2007)). The Commissioner must prove that "the severity of a claimant's impairment has medically improved, and that the claimant is now able to perform substantial gainful activity." Id. To satisfy this burden, the Commissioner uses an eight-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. § 404.1594(f). First, the claimant's disability has ended if they are engaged in any substantial gainful activity. See 20 C.F.R. § 404.1594(f)(1). Second, the ALJ determines whether the claimant has an impairment or combination of impairments that meets or equals the severity criteria set forth in the Listing of Impairments. See 20 C.F.R. § 404.1594(f)(2). If the impairment satisfies the criteria for a listed impairment, the claimant is considered disabled. See 20 C.F.R. §§ 404.1594(f)(3), 404.1594(b)(1). On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must proceed

-11-

to step three and determine whether there has been any medical improvement in the claimant's condition since the disability began. Id. "Medical improvement is any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [a claimant] was disabled." 20 C.F.R. § 404.1594(b)(1). If an ALJ finds that there has been medical improvement, then the analysis proceeds to step four, and if not, then it proceeds to step five. 20 C.F.R. § 404.1594(f)(3). At step four, the ALJ must determine if the medical improvement "is related to [a claimant's] ability to do work . . . i.e., whether or not there has been an increase in the residual functional capacity." 20 C.F.R. § 404.1594(f)(4). If the ALJ determines that the medical improvement is not related to the ability to do work, then the analysis proceeds to step five, but if it is so related, then the analysis jumps to step six. Id. At step five, the ALJ must determine if any of the exceptions to medical improvement contained at 20 C.F.R. §§ 404.1594(d)-(e) apply. If any of the exceptions in paragraph (d) apply, then the ALJ continues to step six, but if any of the exceptions in paragraph (e) apply, then the claimant is not disabled. 20 C.F.R. § 404.1594(f)(5). Step six requires that the ALJ determine whether all of a claimant's current impairments in combination are considered severe. 20 C.F.R. §§ 404.1594(6), 404.1521. If a claimant's impairments are severe, then the ALJ proceeds to step

-12-

seven and assesses the claimant's ability to perform substantial gainful activity, first by determining the claimant's RFC, and then by determining if the claimant's RFC allows them to perform any relevant past work. 20 C.F.R. §§ 404.1594(f)(7), 404.1560. If a claimant can perform relevant past work, then they are not disabled. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the eighth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2).

## C.   Medical Opinion Evidence

Madden argues that the ALJ did not correctly apply the regulations when determining his RFC at step seven, and that this necessarily means that the ALJ's RFC determination is not supported by substantial evidence. Madden specifically claims that the ALJ did not properly explain his decision for giving Dr. Moragne's and Dr. Wilson's opinions minimal and little weight respectively, as required by 20 C.F.R. § 404.1527.[1]

---

[1]It is unclear whether Madden is also challenging the evaluation of medical opinions regarding his physical limitations. Madden's brief only discusses Dr. Moragne's and Dr. Wilson's opinions in detail, but also states that "the ALJ failed to properly evaluate any of the medical opinions under the proper standard of 20 CFR 404.1527[.]" (ECF No. 22 at 11) (emphasis added). The court construes Madden's arguments as relating only to the evaluation of Dr. Moragne's and Dr. Wilson's opinions for two reasons. First, the lack of any citations to or examples of deficiencies in the evaluation of other opinions would require the court "to formulate

As a preliminary matter, because Madden filed his application for benefits before March 27, 2017, the ALJ was required to adhere to 20 C.F.R. § 404.1527 in considering medical opinions and prior administrative medical findings in the record.[2] In formulating an RFC assessment under these regulations, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)); see also Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010). "As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has

_____

arguments on [Madden's] behalf," which is improper. Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 491 (6th Cir. 2006); see also Hammond v. Comm'r of Soc. Sec., No. 20-1158-TMP, 2021 WL 4486366, at *9 (W.D. Tenn. Sept. 30, 2021) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (quoting Rogers, 486 F.3d at 247). Second, Madden did not contest the improvement in his physical condition at the hearing and seemed to rest his case for disability solely on his mental impairments. (R. 40) (Q: "So once you got out of the kidney failure and that resolved, what is it that has been keeping you out of the workforce and making you unable to just go out and resume a normal workday, workweek?" A: "It's just I can't be around people. You know, I can't do it.") (direct examination); (R. 42) (Q: "Does that pretty well cover what is keeping you out of the workforce now?" A: "Yeah, it's just my mental capacity. It's not like it used to be.") (direct examination).

[2]For claims filed on or after March 27, 2017, new regulations that abandon the old scheme of weighing medical opinion evidence apply. See 20 C.F.R. § 404.1520c.

-14-

not performed an examination." Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375 (6th Cir. 2013). The Sixth Circuit Court of Appeals has explained that:

> An opinion from a treating physician is "accorded the most deference by the SSA" because of the "ongoing treatment relationship" between the patient and the opining physician. A nontreating source, who physically examines the patient "but does not have, or did not have[,] an ongoing treatment relationship with" the patient, falls next along the continuum. A nonexamining source, who provides an opinion based solely on review of the patient's existing medical records, is afforded the least deference.

Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012) (quoting Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007)) (internal citations omitted). A treating source's opinion is due controlling weight if it is "well-supported by medically acceptable clinic and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2); Turk v. Comm'r of Soc. Sec., 647 F. App'x 638, 640 (6th Cir. 2016). When an ALJ does not grant a treating source opinion controlling weight, they must evaluate each medical opinion by considering the length of the treatment relationship and frequency of examination, the nature and extent of the relationship, the supportability and consistency of the opinion, the specialization of the source, and any other relevant factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c). There is no need to "systematically address each factor listed in 20 C.F.R. § 404.1527"; an ALJ complies with

-15-

the regulations if they provide "the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion." Thompson v. Saul, 20-cv-01137-TMP, 2021 WL 839162, at *7-8 (W.D. Tenn. Mar. 5, 2021) (quoting Francis v. Comm'r of Soc. Sec., 414 F. App'x 802, 805 (6th Cir. 2011)).

Madden argues that the ALJ inadequately explained his decisions to not give Dr. Moragne's opinion controlling weight and to give Dr. Wilson's opinion only some weight. He claims that "the ALJ failed to consider length/frequency of examination, nature/extent of treatment relationship, specialization of the medical opinion, and any other pertinent factors," instead resting his decisions "only on the factors of supportability and consistency." (ECF No. 22 at 11.) However, this argument takes both too strict a view of the regulations and too blinkered a view of the opinion. The ALJ's opinion clearly noted the nature and extent of the treatment relationship both doctors had with Madden as well as their specializations. (R. 21) (describing Dr. Moragne as "the treating psychiatrist"); (R. 20) (noting that "[Madden] underwent consultative psychological evaluation by Dr. Dennis Wilson.") While the opinion certainly focuses more on the supportability and consistency of these opinions rather than these other factors, nothing in the regulations requires each factor to

be considered at equal length or with equal weight.[3] See Thompson, 2021 WL 839162 at *7-8.

Regarding Dr. Moragne's opinion, the regulations only require that the ALJ "provide 'good reasons' for both [their] decision not to afford the [treating] physician's opinion controlling weight and for [their] ultimate weighing of the opinion." Biestek v. Comm'r of Soc. Sec., 880 F.3d 778, 785 (6th Cir. 2017) (quoting Francis, 414 F. App'x at 804-05). Good reasons were provided here. The ALJ explained that Dr. Moragne consistently described "that the claimant's overall psychiatric examination including mood, affect, behavior, and memory was normal." (R. 20) (internal citations removed). As one of the numerous summaries of Dr. Moragne's notes details:

> His notes show that throughout the period from May 2014 through the most recent treatment in December 2018 he consistently assessed the claimant's psychiatric examination consisting of mood, affect, behavior, appropriateness, and memory as normal and consistently specifically noted that the claimant had normal affect and seemed euthymic (having normal mood). He repeatedly noted that the claimant was happy, talkative, and expressed hopeful thoughts. In December 2016 Dr. Moragne described the claimant as cheerful and in February 2017 noted that he was in a good mood. In November 2017 he reported that the claimant presents "in his usual fashion" engagable and talkative with normal affect and seeming euthymic and again reported his mood was stable. Dr. Moragne's characterization of this presentation as usual for the claimant underscores the absence of

---

[3]This court has previously held that a complete failure to discuss a physician's specialization does not constitute reversible error on its own. Lucy v. Saul, No. 19-1083-TMP, 2020 WL 1318803, at *6 (W.D. Tenn. Mar. 20, 2020).

ongoing clinical signs of depression, bipolar disorder, anxiety, or other significant mental pathology.

(R. 20-21) (internal citations removed). After exhaustively describing Madden's treatment history with Dr. Moragne, the ALJ ultimately concluded:

> The treating psychiatrist consistently assessed the claimant's psychiatric examination consisting of mood, affect, appropriateness, and memory as normal. These repeated assessments by the treating psychiatrist are patently incompatible with a degree of any mental pathology that would impose ongoing significant functional limitation. In view of the demonstrated absence of ongoing clinical signs of depression, anxiety, or any other mental pathology, the allegation of disabling mental problems is unsupported by the medical evidence . . . For this reason alone the claimant cannot be found to have a disabling mental impairment.

(R. 21.) Thus, after examining the evidence, the ALJ determined that Dr. Moragne's opinion was inconsistent with and not supported by the record as a whole, despite his treatment relationship with Madden and psychiatric specialization. The ALJ found that Dr. Moragne's diagnoses and limitations were inconsistent his own notes, which "contain[ed] no medical evidence as required by section 404.1508 of any non-cognitive mental impairment which persisted at a disabling level of severity [] for a period of 12 continuous months." (R. 21.) The ALJ specifically discussed and cited Dr. Moragne's notes from sessions in September 2014, December 2016, April 2016, July 2016, February 2017, November 2017, May 2017, April 2018, May 2018, and December 2018 to support his conclusion. (R. 19-22.) Even after the ALJ concluded that Dr.

Moragne's opinions were inconsistent with and unsupported by the record, he nevertheless "g[a]ve claimant the benefit of the doubt" and limited his ultimate RFC finding in light of Madden's reported symptoms. (R. 23.) The ALJ provided more than enough good reasons to explain why Dr. Moragne's opinion was not given controlling weight, and why it was ultimately assigned little weight. See Keeler v. Comm'r of Soc. Sec., 511 F. App'x 472, 473 (6th Cir. 2013) (discounting treating source opinion justified where it is internally inconsistent, based on subjective complaints, and contradicted by the record as a whole). The demands of § 404.1527 are satisfied.

Madden also briefly argues that the ALJ made the same analytical errors when evaluating Dr. Wilson's opinion. When assessing a non-treating source's opinion, the "explanatory requirement" of § 404.1527 does not apply. Stacey v. Comm'r of Soc. Sec., 451 F. App'x 517, 519 (6th Cir. 2011) (citing Ealy, 594 F.3d at 514). Instead, the ALJ must only say enough "to allow a reviewing court to trace [their] reasoning." Jines v. Berryhill, No. 18-1234-TMP, 2019 WL 4644000, at *5 (W.D. Tenn. Sept. 24, 2019) (citing Stacey, 451 F. App'x at 519); see also Noto v. Comm'r of Soc. Sec., 632 F. App'x 243, 245-46 (6th Cir. 2015) (The ALJ is "not required to state weight given to opinion of a non-treating physician, however, the ALJ's decision still must say enough to

allow the appellate court to trace the path of his reasoning[.]")
(internal quotation marks omitted).

The ALJ discussed Dr. Wilson's opinion in depth and provided
more than enough detail to allow the court to trace his reasoning.
The ALJ noted that Dr. Wilson provided a "consultative
psychological evaluation," and thus considered the nature and
extent of the relationship between Madden and Dr. Wilson, as well
as Dr. Wilson's specialization. (R. 20.) The ALJ also discussed
the results of Dr. Wilson's evaluation in detail. He explained
that "Dr. Wilson reported that the claimant seemed quite relaxed
and not at all anxious, restless, or tense" and that "these
observations are inconsistent with significant anxiety." (Id.) The
ALJ considered that Dr. Wilson's exam showed "no clinical signs"
of ADHD and that Dr. Wilson performed intelligence testing that
Dr. Moragne did not. (R. 21.) These intelligence tests showed
"impaired sentence comprehension and math computation scores" and
factored into the ALJ's decision to limit Madden's RFC. (R. 21-
22.) After discussing all of Dr. Wilson's findings, the ALJ
summarized them as follows:

> Dr. Wilson opined that the claimant had no limitation of
> his ability to understand, remember, and carry out
> complex instructions; and moderately limited ability to
> make judgments on simple and complex work-related
> decisions; interact appropriately with supervisors,
> coworkers, and the public; and respond appropriately to
> usual work situations and changes in a routine work
> setting. Although this assessment is inconsistent with

> Dr. Wilson's own findings and the record as a whole, it
> is given some evidentiary weight.

(R. 22) (internal quotation marks omitted). The ALJ's opinion makes clear why he assigned Dr. Wilson's opinion only little weight. Dr. Wilson only examined Madden once, and his findings were somewhat inconsistent with the record. The ALJ explained this in full, which is all the regulations require.

### III. CONCLUSION

For the reasons above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

October 27, 2021
Date